# AFFIDAVIT

Eli H. Sautter, first being duly sworn, deposes and says:

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been for approximately six and one-half (6.5) years. Prior to my assignment as a Task Force Officer, I was a Patrolman and Detective at the Cincinnati/Northern Kentucky International Airport Police Department. I have been employed as a police officer for twelve (12) years. As a Task Force Officer with the DEA, my duties have included the investigations of violations of federal laws concerning the importation, manufacture, possession and distribution of controlled substances as defined by Title 21, United Stated Code, including controlled substances such as heroin, cocaine, methamphetamine, and other dangerous drugs. During my tenure as a police officer, I have participated in numerous investigations involving drug trafficking and have attended numerous specialized training schools conducted by the DEA and other law enforcement agencies. Some of the training I have attended include: DEA Basic Investigators School, Operation Jet-way Training (Training that is specialized to airplane, train, and bus interdiction), INIA (International Narcotics Interdiction Association – specialized in airplane, train, and bus interdiction), Covert Investigations and many more. I have participated in all aspects of drug investigations, including physical surveillance, undercover operations, execution of search warrants, interdictions and arrests of drug traffickers.

2. The information in this Affidavit is based on my personal investigation and does not include all information obtained during this investigation, rather only that believed necessary to provide a legal basis for the civil forfeiture.

3. On June 26, 2015, agents from the DEA Cincinnati RO and detectives from the Cincinnati/Northern Kentucky International Airport Police Department (Airport Police) received information that Tyrone Barnett was traveling from Washington, D.C., to Los Angeles, California, with a connecting flight through Cincinnati, on a suspicious flight itinerary. Barnett was traveling on a one-way ticket which was purchased one (1) day prior to travel to a known source city/state. In addition, Barnett was known to the officers because he and a travel companion were interdicted in Cincinnati only six (6) months prior. Barnett had been in possession of approximately $4,000.00 cash, however, the cash was not seized on that occasion. Barnett's criminal history report shows multiple drug trafficking charges.

4. DEA agents and officers responded to the airport terminal to await the departure of the flight to Los Angeles. As passengers began boarding the plane, TFO Bill Conrad positioned himself behind the ticket agent so he could observe the passenger's name as their boarding passes were scanned. TFO Richard Bernecker and I stood in the opening of the jet-way to observe the passengers and to perform encounters. TFO Bernecker noticed Barnett standing in the gate area staring at the agents. Barnett continued to stare at the agents during the boarding process.

2

Once Barnett's ticket was scanned, TFO Conrad notified us of Barnett's presence. Once Barnett was in the entrance of the jet-way, I identified myself as a police officer and asked him if I could speak to him. Barnett stated, "About what?" I asked a second time if I could speak to him and Barnett asked again, "About what?" I explained that the other officers and I are part of an interdiction group looking for large sums of money and/or drugs related to narcotics and/or terrorism. Barnett stated, "You're not doing this to me today."

5. Based upon Barnett's criminal history, suspicious flight itinerary, suspicious behavior prior to boarding, and the agents' previous encounter with Barnett, I advised Barnett that we were going to detain his carry-on bag so that it could be examined by a narcotics K-9. Barnett refused to relinquish the bag saying, "You are not searching me," and he attempted to board the plane. I advised Barnett that he is free to go, but his bag was being detained. Barnett continuously attempted to board the plane and pushed by the agents. After a period of time in which we continued to ask Barnett to release the bag and he continued to refuse, even blocking the jet-way and not allowing other passengers to board the plane, and intervention by TFO Conrad, a Delta Airlines employee, and a uniformed officer of the Airport Police, Barnett was placed under arrest. A struggle ensued before Barnett was eventually restrained. He was charged with Disorderly Conduct 2nd Degree, Obstructing Governmental Operations, Resisting Arrest, and Assault 3rd Degree.

6. Incident to the arrest, Airport Police Officer Jason Gilliam searched Barnett and located two (2) cellular phones and a bundle of U.S. currency on his person. After the search, Airport Police Officer Shawn Dedden transported Barnett and his belongings to the Airport Police Department for processing. Shortly thereafter and upon his request, Barnett was transported to St. Elizabeth Medical Center in Florence, Kentucky by the Airport Paramedics. Barnett was released shortly after with no serious physical injuries and was transported back to the Airport Police Department to continue processing.

7. During processing, Barnett decided to waive his rights; he signed an Airport Police Department Waiver of Rights form and spoke to TFO Conrad regarding the incident. TFO Conrad asked Barnett what was in the Louis Vuitton carry-on bag and Barnett replied, "Huh, what do you mean what's in the bag?" TFO Conrad asked again, and Barnett stated, "My clothes." TFO Conrad questioned, just clothes? Barnett replied, "And some money." TFO Conrad asked Barnett how much currency? Barnett stated around $9,000.00 and then stated that he didn't know. TFO Conrad asked Barnett if the luggage belonged to him, and Barnett stated yes and he had his clothes, shoes, and some money.

8. TFO Conrad asked Barnett what he did for a living, and Barnett stated that he was a prize fighter (boxer) and owns his own promotion company called Top Flight Productions. Barnett stated that the promotion company promotes his own fights. TFO Conrad asked Barnett what his reason for travel was, and Barnett stated he

4

was going to the BET Awards and that he would be staying at the Embassy Suites. TFO Conrad asked Barnett if he had ever been arrested before. Barnett stated, "No comment," and that he did not know why that was important. Barnett later admitted that he has been arrested for drugs and drug trafficking.

9. TFO Conrad asked Barnett where the money came from and Barnett stated that the money he was carrying came from his company and from being a prize fighter (boxer). Barnett stated that he took $4,800.00 out of the bank, but that could not be confirmed. Barnett stated that the rest came from a safe in his home.

10. Barnett was asked further about his trafficking charges and he refused to give details. I conducted a Google search for Top Flight Productions and learned that its last event promotion was in June 2013 for Barnett's own fight. I also searched BoxRec Boxing (boxrec.com) records and discovered that Barnett has only fought one (1) time since October 26, 2013. BoxRec Boxing shows Barnett's last fight on May 31, 2014, which resulted in a loss.

11. When his processing was complete, Barnett was transported to Boone County Detention Center. The cash from his person, the two cell phones, and his carry-on bag were retained at the Airport Police Department. On June 30, 2015, I applied for a Commonwealth of Kentucky Search Warrant for Barnett's carry-on bag. The warrant was issued by Judge Richard Bruggemann, Kenton Circuit Court.

12. On July 1, 2015, at the Airport Police Department, TFO Conrad, Airport Police Lt. Steimle, Det. Dave Bentley, and I executed the warrant on Barnett's carry-on bag. I located several bundles of U.S. currency in the carry-on bag. The bundles were rubber-banded together and concealed in a pair of Gucci shoes. Next I found two (2) large bundles of U.S. currency rubber-banded together and concealed under the in-soles of a pair of Versace shoes. Additional bundles of U.S. currency which were also rubber-banded together were found lying in the bottom of the bag. The total amount of currency found in Barnett's carry-on bag was $18,100.00.

13. The clothing in the carry-on bag consisted of one (1) pair of jeans, two (2) shirts, two (2) pairs of shoes, two (2) belts, one (1) pair of athletic shorts, and only a few pair of under garments. The clothing was all high-end and some still had the price tag (Men's Versace Polo shirt $275.00). It appeared to be only enough clothing for one or two days.

14. The $18,100.00 found in Barnett's carry-on bag and $1,695.00 on his person was seized based upon probable cause that it was proceeds of drug trafficking or was intended for such use. The two (2) cell phones found in his carry-on bag were seized for evidence.

15. The seized currency was placed into two (2) separate evidence envelopes for examination by a drug detection K-9. The currency was removed from the

evidence bags and hidden in separate locations unknown to the drug detection K-9 and his handler. The dog located and alerted to each separately.

16. Several mitigating factors establish probable cause that the U.S. currency carried by Barnett was proceeds of drug-related activities, including:

    - one-way airline ticket purchased one day before travel;
    - travel to a known source city/state;
    - prior interdiction;
    - multiple charges for drug trafficking;
    - no proof of legitimate source for the cash;
    - bundles of cash wrapped with rubber bands—consistent with drug trafficking;
    - positive alert by drug-detecting dog.

17. On or about August 20, 2015, Barnett filed a claim in the DEA's administrative forfeiture proceeding.

For the above-stated reasons your affiant believes that the seized currency was furnished or intended to be furnished in exchange for controlled substances, was proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics

and is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881 (a)(6).

This 17TH day of November, 2015.

_____
Eli H. Sautter, Task Force Officer
Drug Enforcement Administration

Subscribed, sworn, and acknowledged before me by Eli H. Sautter this the 17th day of November, 2015.

My Commission expires: 1/14/2017

_____
Timothy James Cline #481475
NOTARY PUBLIC, STATE AT LARGE

8